UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

S.B., individually, and on behalf of her child, A.W.,

                Plaintiff-Appellants,

                -vs.-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                Defendant-Appellee.

**JOINT STATEMENT OF FACTS**

No. 21-cv-9139

------------------------------------------------------------------- x

## JOINT STATEMENT OF FACTS IN CONNECTION WITH THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

Pursuant to the Court's Scheduling Order of January 3, 2022 (Dkt. No. 19), the parties hereby submit the following Joint Statement of Facts in Connection with the Parties' Motions for Summary Judgment.

**Background**

1. Plaintiff S.B. is the mother of A.W. ("the Student"), a child with a disability who resides in New York County, City of New York. Certified Record ("CR") at 79-80.

2. Plaintiff A.W. was 13 years old at the start of the 2020-2021 school year. CR 79.

**A.W.**

3. In December 2019, A.W. was diagnosed with Major Depressive Disorder, Disruptive Mood Regulation Disorder, Attention-Deficit/Hyperactivity Disorder, Oppositional Defiant Disorder, and Specific Learning Disorder, with Impairment in Written Expression by Clinical Neuropsychologist David H. Salsberg CR at 697-698.

1

4. In 2019-2020, A.W. attended a DOE middle school, ("75 Morton"). CR at 299. However, during that time he "started school refusing" and eventually needed to spend material portions of the school year hospitalized at the Bellevue hospital for his emotional needs. CR. at 300.

5. On September 9, 2019, A.W.'s IEP Team convened, classified A.W. with an Other Health Impairment, and recommended a ten-month program of Integrated Co-Teaching ("ICT") instruction in a general education setting with two 40-minute sessions of counseling per week. CR 445, 452.

6. In December 2019, A.W.'s parents obtained a neuropsychological report with Dr. Salsberg. CR at 690. The report found that A.W. "had previously exhibited difficulty maintaining friendships, understanding boundaries, and taking responsibility for behaviors as well as non-compliance, suicidal ideation, self-harm, lying, cheating, stealing, school refusal, aggression, defiance, hyperactivity, isolation and eloping." *See* CR at 690-692.

7. On December 20, 2019, A.W.'s IEP was changed to recommend 12-month services for his Emotional Disturbance classification, with his placement deferred to the Central Based Support Team ("CBST") to identify a New York State Approved Non Public School Placement ("NPS"), for a day program in a 12:1+1 class with two 30-minute sessions of counseling per week ("Dec. 2019 IEP"). CR. at 459, 467, 470.

8. The Dec. 2020 IEP listed an implementation date of Dec. 20, 2019.

9. In early March 2020, two NPSs sent the CBST acceptance offers with unspecified implementation dates, conditioning acceptance of A.W. on changes being made to A.W.'s Dec. 2019 IEP. CR at 727-728.

10. On March 18, 2020, A.W. received an amended IEP ("March 2020 IEP") recommending varied sessions of weekly ELA and Math instruction, in a 12:1+1 class, and one 40-minute session of counseling per week. CR 483.

11. S.B. was not involved in the development of the March 2020 IEP. CR 487.

12. S.B. testified that A.W. was attending a Bellevue hospitalization program during July 1, 2020 through July 10, 2020, at which point, he was exited. CR 304-305.

13. S.B. testified that A.W. was on a 90 to 180 day waitlist for a NPS, *i.e.*, "Goldsmith's" when he was exited from Bellevue on July 10, 2021. CR 304.

14. A.W. attended SUWS from July 22, 2020 through October 12, 2020 CR. at 512.

15. A.W. transferred from SUWS to at a residential boarding school specifically for middle and high school boys, Wediko, in Windsor, New Hampshire, where he continues to attend. CR at 731.

16. On September 29, 2020, the parents provided an updated 10-day notice indicating their intent to place A.W. at SUWS and Wediko. CR at 11.

**SUWS**

17. SUWS is located in North Carolina. CR. at 151. The program "serves a number of kinds of students… with diagnoses ranging from depression, anxiety, behavioral management, learning difficulties, emotional regulation, [or] attachment issues." CR at 151. SUWS employs milieu therapy. CR at 156.

18. The SUWS is a "wilderness therapy intervention program" which serves adolescents struggling with depression, anxiety and other emotional regulation. CR at 18. Students at SUWS "are together at all times" and "work together in order to prepare meals, set up camp, hike from one campsite to the other, or transition to our base camp." CR at 160. Students at SUWS

camp for most of their time, living in tents, learning to use the bathroom in the wilderness in environmentally conscious ways. CR at 160. Students also work on their own individual tasks. CR at 160. Students are usually with a group of six to eight students and between two and four filed staff. CR at 207.

19. A.W. attended SUWS's Seasons program which "focuses on the unique development of [their] youngest students, ages 10-14." CR at 490. The program "provides a therapeutic wilderness milieu while delivering specific interventions that have a strong neurodevelopmental basis." *Id*. SUWS describes the curriculum as dynamic treatment that includes a "ropes course, Theraplay, expressive arts, mind-body therapies and experiential interventions." *Id.*

20. Ms. Thiessen, the SUWS clinical director, testified at the IHO hearing that the duration of the program was often between eight to twelve weeks and was individualized to each student CR at 159. SUWS helps students navigate conflicts by pushing them to learn empathy, often by using "I feel" statements, and teaching them to take time to calm themselves in how to respond to negative situations. CR at 176. She testified that SUWS is not an academic institution. CR at 198.

21. The clinical director stated that the student engaged in "psychoeducation", conflict resolution activities and check-ins multiple times a day. CR at 19. The student participated in "milieu therapy" at all times as part of his cohort and also received individual therapy once a week. CR at 19. SUWS cites scientific studies in support of "milieu therapy", A.W. also received individual therapy and assignments from a licensed therapist; assignments included topics for journal entries to help him understand his thoughts, feelings and choices. CR. at 19.

22. A.W.'s report card described SUWS as a program designed to be a "powerful intervention for the students that need[ed] structure, supportive counselling, motivation improvement and the development of self-esteem, self-reliance and self-respect." CR at 512. At SUWS, students complete a written Search and Rescue Manual. *Id*. CR at 163. SUWS produces report cards that outline the subject and hours a child spent on each. *Id.*

23. The SRO noted that "in effect, the student's 'report card' could have been written for any student but for the number of hours that SUWS attributed to each course description." CR at 21. Lessons are not taught individually, but often simultaneously through activities facilitated by SUWS staff. CR at 163. A.W.'s SUWS report card does not contain grades or assessments. CR at 512.

24. The SUWS discharge summary described the student's progress in the wilderness program relative to his mental health diagnosis. CR at 514-516. In regard to academic progress, the clinical director testified that they do not measure progress "through an academic lens." CR at 197.

**Hearing Before the IHO**

25. This proceeding was initiated on September 11, 2020, when S.B. filed a Due Process Complaint ("DPC") No. 200689 by her attorney Noelle Boostani, Esq. ("Plaintiff's Counsel") CCR at 411-431. The Plaintiff asserted that the DOE denied her child a FAPE for the 2020-2021 school year and sought, *inter alia*, funding for her child's placement at SUWS, and the accompanying travel expenses for the 2020-2021 school year. *Id*.

26. On March 29, 2021, an impartial hearing on the merits took place. CR at 24. The DOE did not present a case in chief. CR 135. S.B. presented three witnesses, which included Erica Thiessen, SUWS's Clinical Director, and S.B. CR at 129, 286. Ms. Thiessen testified first for

S.B.'s case. CR at 148. S.B. presented documentary evidence, including: Ms. Thiessen's resume, SUWS's Program Description, Work Sample Data Collection, Report Card, Discharge Summary, Enrollment Contract, and Tuition Affidavit, which were all admitted into evidence. CR. at 489-524.

27. The record closed on May 8, 2021, and the IHO issued the Findings of Fact and Decision ("FOFD") on May 23, 2021, determining that the DOE had failed to offer a FAPE, that the unilateral placements at SUWS and Wediko were appropriate, and that equitable considerations weighed in favor of the parents. CR. at 77.

**Appeal to the SRO**

28. On July 2, 2021, the DOE filed a Request for Review, appealing the determinations of the IHO's FOFD that found that the SUWS was an appropriate placement for the Student. CR. at 47. The Request for Review asked the State Review Officer (SRO) to review the finding that "SUWS was an appropriate placement and ordered the DOE to fund SUWS and the accompanying travel expenses for the 2020-201 school year." CR at 47.

29. On July 11, 2021, S.B. answered, disputing the DOE's legal premises and conclusions on the issues raised for review. CR 760-769.

30. On August 5, 2021, the SRO sustained the appeal, holding that "the evidence in the hearing record is insufficient to establish that S.B.'s unilateral placement of the student at SUWS for the relative portion of the 2020-2021 school year was appropriate." CR. at 23. The SRO reasoned, based on the relevant federal case law, that there must be a "clear relationships between the noneducational, medical and mental health services being provided and the education opportunities such services were designed to support." CR at 22.

31. The SRO found that while the mental health services at the SUWS "could fall into the category of a related service," the educational opportunities for A.W. "were insufficiently clear from the record, especially when the clinical personnel providing mental health services essentially conceded that SUWS does not attempt to view the student through an academic lens." CR. at 21.

32. The SRO reported that "the totality of the circumstances in this case most strongly supports the conclusion that SUWS does not even view itself as an alternative schooling environment and the evidence shows that it did not provide an opportunity for the student to receive any educational instruction from teachers." CR at 22.

33. The Plaintiffs now appeals.

Dated: January 24, 2022

New York, New York

Respectfully submitted,

*Noelle Boostani*

Noelle, Boostani, Esq.
Law Office of Noelle Boostani
Attorney for the Plaintiffs
1634 Church Ave. Apt. 8A
Brooklyn, NY 11226
T (727) 417 – 2609
F (646) 224 – 8472
Boostani@KidsWithSpecialMinds.com